IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Marian Mohamed,               :
            Plaintiff         :    Civil Action 2:14-cv-00078

      v.                   :    Judge Marbley

Carolyn W. Colvin,         :    Magistrate Judge Abel
Commissioner of Social Security,
            Defendant     :

**REPORT AND RECOMMENDATION**

Plaintiff Marian Mohamed brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits.  This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**  Plaintiff Marian Mohamed she became disabled in September 2008, at age 21, by headaches, a seizure disorder, right-sided pain and an inability to use her right arm. She was admitted to the United States as a Somalian refugee on July 28, 2004, and she maintains that she is unable to communicate in English.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred by finding that plaintiff is able to communicate in English;

- The administrative law judge erred by characterizing plaintiff's headaches as "non-severe";
- The administrative law judge improperly evaluated plaintiff's mental health impairments; and,
- The administrative law judge failed to consider the opinion of plaintiff's treating neurologist.

**Procedural History.** Plaintiff Marian Mohamed filed her application for disability insurance benefits on November 10, 2010, alleging that she became disabled on September 27, 2008, at age 21, by a seizure disorder. (R. 113, 128.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On July 27, 2012, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 7.) A vocational expert also testified. On September 24, 2012, the administrative law judge issued a decision finding that Mohamed was not disabled within the meaning of the Act. (R. 65.) On November 21, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Marian Mohamed was born January 1, 1987. (R. 113.) In response to the question asking the highest grade of school that she had completed, Mohamed indicated "0". (R. 128.) She has worked as a cleaner at a uniform service, a housekeeper in a hotel, and a laborer in a warehouse. She last worked September 2, 2009. (R. 128-29.)

**Plaintiff's Testimony.**  Through an interpreter, plaintiff Ms. Mohamed testified as follows. At the time of the hearing, plaintiff was observing a week-long religious holiday.  As part of her religious observation, she was fasting and she was prohibited from lying or engaging in any bad conduct toward other people. Even if she had not taken an oath for the purposes of the hearing, she would never lie. (R. 14.)

She is the kind of person who is sick and will not do anything for herself. When she has a seizure, she cannot move her body. When she has a migraine, she lays down for four hours straight. With migraines, she cannot see anything; everything is white. She cannot help herself or her children. (*Id.*)

The last year that she worked in the factory, she missed work because of fainting spells. She was told that she could not work there because she was sick. When she did work, she had to tell her manager that she could not do some tasks because of her migraines. She experienced five to six migraines per week. When she experiences a migraine, her pain is intense and excruciating and her eyes get white. She cannot see at all. She has to lay down for four hours straight. She vomits two or three times per week. (R. 15.) She can tell when a headache is coming, and even her child can tell when one is coming.  Her mother helps her care for her children when she has a migraine. Her mother comes over every day. (R. 16.)

Plaintiff testified that she has a seizure every week. Her medications had helped significantly. She cannot use her right arm. She is unable to do anything with her right hand. If she tries to use her right hand to eat, she has pain. (R. 17.) Ms. Mohamed also

experiences depression and anxiety because of her health condition. She cannot obtain a driver's license. (R. 18.) She did not give any testimony about her ability to understand English or about how she was able to understand her job instructions when she worked before becoming ill.

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Doctors Hospital. Plaintiff was treated at the emergency department following a seizure on June 27, 2008, September 1, 2008, October 12, 2008. (R. 242-49.) She described a generalized shaking movement that mostly occurred at night and could be triggered by heat. When the seizures occurred, a family member would hold her down until she went to sleep. When she wakes up, she has no recollection of the seizure. (R. 242.) A CT scan of her head revealed no abnormalities. She was referred to a neurologist. (R. 243.)

A December 8, 2008 MRA and MRI of plaintiff's brain were unremarkable. (R. 275-78.)

A February 22, 2010 MRI of her cervical spine was normal. (R. 279.) A September 30, 2010 x-ray of plaintiff's hip was normal. (R. 389.)

Yixin Lin, M.D. On October 31, 2008, Dr. Lin, a neurologist, began treating plaintiff for her seizure disorder. Dr. Lin noted that plaintiff spoke little English but her husband was fluent. Her seizures started six months ago. She had one or two seizures

4

every month. The seizures usually occurred during sleep, and her husband had witnessed them. She lost consciousness, her eyes rolled back, and her arms and leg would shake. It lasted one to two minutes and was followed by several hours of confusion. She had also experienced loss of consciousness without the shaking of the arms and legs. She had been to the ER six times but had not been prescribed anti-seizure medication. (R. 312.)

Dr. Iben, who had referred Ms. Mohamed to Dr. Lin, had started her on Keppra on October 21. She had not had any seizures since the medication was started. She denied any headache, nausea, vomiting, or neck stiffness. Dr. Lin diagnosed seizure disorder with complex partial seizures and secondary generalized tonic/clonic seizures. Dr. Lin recommended that plaintiff have an MRI, MRA and MRV of the brain without contrast. He also ordered an EEG and a 28-hour ambulatory EEG. Dr. Lin increased her medication. (*Id.*) Plaintiff was instructed not to take tub baths or perform high elevation activities. (R. 313.)

On December 1, 2008, plaintiff reported having one seizure three weeks ago. She had forgotten to take her medication three days prior to the seizure. She was prescribed regular Keppra 1000 mg per day. She had no significant side effects. Dr. Lin noted that he specifically talked with plaintiff's husband regarding the importance of taking the medication regularly twice a day. Dr. Lin reordered an EEG and a 48-hour ambulatory EEG. (R. 258.)

5

On January 12, 2009, Dr. Lin noted that plaintiff had not experienced any seizure activity since her last visit on December 1, 2009. Her MRI, MRA and MRV performed on December 8, 2008 were unremarkable. Plaintiff was instructed not to drive, take tub baths, or perform high elevation activity. (R. 257.)

On February 23, 2009, plaintiff reported that she had not had any seizure activity since her last visit. Plaintiff stated that she had a headache that had started the night before. She had no blurred vision or decreased visual activity. Dr. Lin referred plaintiff for an MRI and MRV. (R. 256).

On June 1, 2009, plaintiff had recently given birth to a healthy baby. She reported that she had seizures every time she attended her English as a second language class. She felt afraid in class. Dr. Lin noted that plaintiff's May 6, 2009 MRI, MRA and MRV were unremarkable. Dr. Lin diagnosed Mohamed with a seizure disorder and a tension type headaches. He stated that she had complex partial seizures and secondary generalized tonic/clonic seizures. Dr. Lin increased her medication and gave her permission to not attend classes. (R. 255.)

On July 27, 2009, plaintiff reported having a seizure on July 14. Her "headache is about the same." Dr. Lin believed that an increased dosage of Keppra would help with both the seizures and the headache. (R. 274.)

On September 9, 2009, plaintiff reported that her headache had increased recently. She was experiencing photophobia and phonophobia. She had no nausea, vomiting, or neck stiffness. Her seizures remained the same, and she denied any new

6

seizure activity. (R. 273.) On October 2, 2009, plaintiff reported having one seizure the week before because she had forgotten to take her medication. Her headache had improved. (R. 272.) On October 19, 2009, plaintiff reported that she had not any further seizure activity and that her headaches had improved. (R. 271.)

On December 4, 2009, plaintiff reported that she had had "several spells" since her last visit during which she could not move her arms or legs on both sides. She had not loss of consciousness. Her headache had almost resolved. Dr. Lin noted that these most recent spells did not appear to be seizure activity. (R. 270.)

On February 15, 2010, plaintiff had not had any seizure activity since her last visit on January 18, 2010. Mohamed complained of joint pain on her right side. She had tenderness in her shoulder, hip, knee and ankle. Mohamed also reported that she had had a bad headache for two weeks and that she had not been able to hold her baby due to significant pain. Dr. Lin suspected that plaintiff had a mixed migraine with tension type headache. Dr. Lin found no definite neurological deficit to explain her right-sided upper and lower extremity pain. He increased her dose of Lyrica to address her pain and reordered her lab tests and a MRI of the brain and spine. (R. 268.)

On March 10, 2010, plaintiff reported having two seizures since her February visit. She continued to have headaches. (R. 311.) On April 23, 2010, plaintiff reported having two seizures the week before. She denied missing any doses of her medication or having sleep deprivation. Her right upper weakness had improved. (R. 310.) On July

7

30, 2010, plaintiff reported that she had had a seizure the day before and one in June. She continued to have pain on her right side. (R. 309.)

On September 27, 2010, Ms. Mohamed reported no seizures since her last visit. Her "headache ha[d] improved." (R. 307.) Her right upper and lower extremity paid had been stable, but she had a new complaint of right shoulder and hip pain. (*Id*.) The same day, Dr. Lin wrote a letter stating that Ms. Mohamed had a seizure disorder and needed to live close to her parent. (R. 308.)

On January 12, 2011, Ms. Mophamed had experienced no seizures since her last visit. (R. 373.)

On February 23, 2011, Dr. Lin wrote a note saying that plaintiff had a seizure disorder that had not been controlled and stated that she needed to be close to her parents' apartment. (R. 414.)

On June 3, 2011, Ms. Mohamed reported three seizures since her last visit. Dr. Lin increased her dose of Lyrica. (R. 413.) On August 3, 2011, Ms. Mohamed reported that her seizures had improved after Dr. Lin increased her dose of Lyrica. (R. 412.)

On October 19, 2011, plaintiff reported she had a seizure two days before. (R. 491.) On December 12, 2011, Dr. Lin noted that plaintiff's right upper and lower extremity pain had resolved. (R. 486.)

In a February 3, 2012 letter, Dr. Lin stated that a seizure disorder could cause brain dysfunction and affect a person's memory and ability to learn new things. Additionally, medication prescribed to treat a seizure disorder affected cognitive

8

functioning and worsened memory problems. As a result, Dr. Lin believed that Ms. Mohamed could not learn or memorize American history of English or pass the test. Dr. Lin requested that plaintiff be granted a waiver of the American history and English tests. (R. 473.)

On March 28, 2012, plaintiff reported that she had not any further seizure activity and that her headaches had been stable. She also reported that she received an injection for her right shoulder pain, which provided some relief. (R. 477.)

On May 1, 2012, Dr. Lin completed a form at the request of plaintiff's counsel. Dr. Lin indicated that plaintiff experienced severe migraine headaches five times per week. (R. 495.) He said that she experienced complex partial seizures that had been confirmed by her own description and description by third parties. Dr. Lin had not observed a seizure, and there was no confirmation of seizures by EEG testing. (R. 494.)

Myung Cho, M.D. On September 23, 2009, Dr. Cho, a State agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Cho found no exertional, manipulative, visual, or communicative limitations. Dr. Cho opined that plaintiff could never balance and that she should avoid all exposure to heights. Dr. Cho noted that plaintiff had complex partial seizures and secondary generalized tonic/clonic seizures. She was regulated on her medications, but she should avoid heights, hazards, dangerous machinery, and driving. (R. 260-67.)

On September 30, 2010, W. Jerry McCloud, M.D., a State agency reviewing physician, considered plaintiff's allegation on reconsideration that her condition had

9

worsened. Plaintiff stated that the seizures had damaged her brain and that she always required someone to be with her. Dr. McCloud noted that a February 15, 2010 follow-up treatment note indicated that plaintiff had not had any seizure activity since her January 18, 2010 visit. Dr. McCloud concluded that the additional evidence did not warrant a change to the September 23, 2009 residual functional capacity assessment. (R. 286.)

Orthopedic Specialists of Central Ohio. Ms. Mohamed began receiving treatment on October 2, 2010 from Orthopedic Specialists of Central Ohio for complaints of pain in her right shoulder and upper arm following a fall. She received physical therapy and injections, but she was not prescribed pain medication. She complained of pain, parethesias and instability. She was diagnosed with rotator cuff sprain and strain, shoulder pain, unspecified disorders of the bursae and tendons in the shoulder region, and sprain and strain of unspecified sites in the shoulder and upper arm. An MRI showed sings of bursitis and possible anterior labral degeneration. (R. 399-405, 412-39, 497-508.)

**Psychological Impairments.**

Scott Lewis Donaldson, Ph.D. On April 19, 2010, Dr. Donaldson evaluated Ms. Mohamed at the request of the Bureau of Disability Determination. (R. 287.) Plaintiff was extremely withdrawn during the evaluation. When asked why she was applying for benefits she said that she was sick and in the hospital all the time. She reported seizure activity and chronic pain through her body. She previously has attempted suicide, but she had not been admitted to a psychiatric facility or received counseling.

10

She had not completed a formal education regimen or participated in vocational training or rehabilitation.

On mental status exam, she established a cautious rapport with the examiner. She did not understand the purpose of the interview. Her affect was inappropriate as it was extremely withdrawn. With the assistance of a translator, her speech patterns did not fall within normal limits. She had difficulty elaborating on her responses. She was found to be vague, and perhaps intentionally so. There was no evidence of flight of ideas or loose associations. Her affect was flat and her mood was extremely withdrawn. Her eye contact was inadequate. She reported difficulty with sleep. She had crying spells on a daily basis. She frequently felt helpless. She suffered from mood swings and symptoms indicative of a mood disorder. She had a depressed mood most of the day, diminished interest in activities, insomnia, psychomotor retardation, fatigue, feelings of worthlessness and a lack of concentration. She reported anxiety and excessive worry about her health.

Dr. Donaldson diagnosed major depressive disorder and generalized anxiety disorder. He assigned a Global Assessment of Functioning ("GAF") score of 45-50.  Dr. Donaldson concluded that her ability to understand, remember, and carry out one- or two-step job instructions did not appear to be impaired. Her ability to perform repetitive tasks did not appear limited. Her motivation was moderately limited based upon her depression and anxiety. Her ability to attend to relevant stimuli was likely to be impeded moderately. Her interpersonal relationship skills and her ability to relate to

11

supervisors and co-workers were markedly limited. Her ability to withstand the stress and pressure associated with day-to-day work activity appeared moderately limited. (R. 287-90.)

Irma Johnston, Psy. D. On June 15, 2010, Dr. Johnston, a State agency reviewing psychologist, completed a psychiatric review technique. Dr. Johnston stated that there was insufficient evidence to determine the severity of her alleged psychiatric impairments. (R. 293-304.)

**Administrative Law Judge's Findings.**

1.   The claimant has not engaged in substantial gainful activity since October 28, 2010, the application date (20 CFR 416.971 *et seq.*).

2.   The claimant has the following severe impairments: seizure disorder and a history of right shoulder injury (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as follows: the claimant is unable to engage in more than frequent handling and reaching with the right upper extremity and is unable to climb ladders, ropes, or scaffolding. In addition, the claimant is limited to no more than occasional climbing of ramps or stairs and must avoid all exposure to unprotected heights and hazardous machinery.

5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.   The claimant was born on January 1, 1987 and was 23 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.   The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in the national economy that the plaintiff can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since October 29, 2010, the date the application was filed (20 CFR 416.920(g)).

(R. 59-65.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.*  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

    **Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>The administrative law judge erred by finding that plaintiff is able to communicate in English</u>. Plaintiff indicated in her initial paperwork that she was unable to speak and understand English, that she was unable to read and understand English, and that she was unable to write more than her name in English. Her symptoms report and hearing questionnaires were completed by Abdi Mohammed. In April 2008, plaintiff required the use of an interpreter during an emergency room visit. In June 2008, a medical evaluation was halted because she could not provide medical information to hospital staff. Treatment notes from September and October 2008 indicated that plaintiff could not speak English and that a interpreter was obtained. She also required an interpreter during hospital visits in March and July 2011 and January 2012. The vocational expert testified that the need for an interpreter in the workplace would preclude competitive work. The administrative law judge's assertion that plaintiff is sufficiently fluent in English to apply for and obtain employment is not supported by the evidence in the record. The

14

administrative law judge did not ask plaintiff any questions during the hearing. The record does not contain any evidence regarding the use of an interpreter in the workplace or what assistance plaintiff had during the application process. It is the duty of the administrative law judge to investigate the facts and develop the arguments for and against granting benefits. The administrative law judge indicated that plaintiff had obtained an Ohio driver's license without accommodation, but there is no evidence in the record supporting this assertion. Furthermore, it is not clear whether the document purported to be a driver's license is a license or a State ID card. Plaintiff testified that she did not have a driver's license. The record contained evidence that plaintiff was unable to continue her English as a second language class because the stress of the class increased her seizures. Although the Field Office report indicated that plaintiff had no problems talking, answering, understanding and hearing, the report does not indicate whether a translator was used. The administrative law judge improperly cherry-picked one treatment note indicating that plaintiff spoke English despite extensive documentation that plaintiff required an interpreter.

- <u>The administrative law judge erred by characterizing plaintiff's headaches as "non-severe"</u>. Plaintiff testified that her headaches were intense and that the pain was excruciating. The pain was so bad that she vomited 2-3 times per week. Plaintiff argues that the administrative law judge incorrectly concluded

that her history of headaches caused her no more than minimal limitations in her ability to perform basic work activities and that her difficulties with headaches were almost resolved.

- <u>The administrative law judge improperly evaluated plaintiff's mental health impairments</u>. The administrative law judge rejected the opinion of Scott Lewis Donaldson, Ph.D., who performed a psychological evaluation at the request of the Bureau of Disability Determination. Dr. Donaldson diagnosed major depressive disorder and generalized anxiety disorder. Dr. Donaldson opined that plaintiff was markedly limited in her ability to withstand the stress and pressures associated with day-to-day work. The administrative law judge failed to include any psychological limitations in his residual functional capacity assessment, suggesting that he completely disregard Dr. Donaldson's opinion. Plaintiff maintains that an administrative law judge must state his reasons for crediting or rejecting opinion evidence. Because the administrative law judge failed to identify his reasons for discounting Dr. Donaldson's opinion, plaintiff was denied fair process and the decision is insufficient to support his rejection of a severe mental health condition or include any psychological limitations in his residual functional capacity.

- <u>The administrative law judge failed to consider the opinion of plaintiff's treating neurologist</u>. Plaintiff argues that the administrative law judge

completely failed to discuss Dr. Lin's opinion or explain what weight he accorded to that opinion.

**Analysis.**  With respect to Ms. Mohamed's education and ability to communicate in English, the administrative law judge stated:

> I find that the evidence does not support the claimant's allegation of being illiterate for employment purposes. The record demonstrates that the claimant is sufficiently fluent in English to apply for and obtain employment after the alleged onset date without any evidence that she received any sort of accommodation for difficulties with English (Exhibit 3D, 5). In addition, the claimant has obtained an Ohio drivers license without providing any indication that she received any sort of accommodation for difficulties with English (Exhibit 1D, 2). The records also indicate that the claimant was able to attend an "English as a Second Language" course and has provided no information that she was unable to succeed in this endeavor (Exhibit 2F, 1). The notes in the Field Office report indicate that the claimant had no difficulties communicating in English (Exhibit 2E, 2; Exhibit 7F, 13). Lastly, medical records describe the claimant as speaking English during treatment sessions (Exhibit 9F, 9). I find that these facts, along with the record lacking any evidence that the claimant has been rejected by potential employers due to a lack of fluency in English, erodes the credibility of the claimant's allegation that she does not speak English and leads me to conclude that the claimant is able to communicate in English. To the extent the claimant bears the burden of proving being illiterate for employment purposes, I find she has failed to meet that burden by at least a preponderance of the evidence.

(R. 64.) Although it is very difficult to determine, it does not appear that the identification card in the record is a driver's license. *See* R. 110. Section 416.964 of Title 20 Code of Federal Regulations, provides in pertinent part:

> In evaluating your educational level, we use the following categories:
>
> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his

or her name. Generally, an illiterate person has had little or no formal
schooling.

. . .

(5) Inability to communicate in English. Since the ability to speak, read
and understand English is generally learned or increased at school, we
may consider this an educational factor. Because English is the dominant
language of the country, it may be difficult for someone who doesn't
speak and understand English to do a job, regardless of the amount of
education the person may have in another language. Therefore, we
consider a person's ability to communicate in English when we evaluate
what work, if any, he or she can do. It generally doesn't matter what other
language a person may be fluent in.

20 C.F.R. § 416.964. Here, plaintiff has worked as a cleaner, a housekeeper and a laborer.

She did not provide any evidence that she was completely unable to communicate in

English. Although plaintiff required the use of a translator when seeking medical care,

this fact alone does not demonstrate that she was unable to communicate in English at

all. Plaintiff failed to provide any testimony as to her ability to speak English or her

experience in her English as a second language course. The administrative law judge's

conclusion that plaintiff failed to demonstrate that she is completely unable to speak

English is supported by substantial evidence given her previous work history and

statements from her treatment notes.

    <u>Severe Impairment</u>.  The Act provides that the Commissioner will determine a

claimant "to be under a disability only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education and work experience engage in any other kind of

substantial gainful work which exists in the national economy . . . ." 42 U.S.C.

§423(d)(1)(A).  The Commissioner's regulations provide:

> If you do not have any impairment or combination of impairments
> which significantly limits your physical or mental ability to do basic
> work activities, we will find that you do not have a severe
> impairment, and are, therefore, not disabled.  We will not consider
> your age, education, and work experience.

20 C.F.R. §404.1520(c).

Repeating the language of the statute, the regulations provide that an

impairment is severe when it "significantly limits [the claimant's] physical or mental

ability to do basic work activities. . . . "  20 C.F.R. §404.1520(c).  Basic work activities

include:

- · "Physical functions such as walking, standing, sitting, lifting,
  pushing, pulling, reaching, carrying, and handling."
- · "Capacities for seeing, hearing, and speaking."
- · "Understanding, carrying out, and remembering simple
  instructions."
- · "Use of judgment."
- · "Responding appropriately to supervision, co-workers, and usual
  work situations."
- · "Dealing with changes in a routine work setting."

20 C.F.R. §404.1521(b).  An impairment is not severe "only if it is a slight abnormality

which has such a minimal effect on the individual that it would not be expected to

interfere with the individual's ability to work, irrespective of age, education, or work

experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Higgs v. Bowen*, 880 F.2d

860, 862 (6th Cir. 1988); *Murphy v. Heckler*, 801 F.2d 182, 185 (6th Cir. 1986); *Farris v.*

*Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985).  This

construction of §404.1520(c) is intended to insure that the Commissioner does not "deny meritorious disability claims without proper vocational analysis." *Higgs*, 880 F.2d at 862 (citation omitted).  The function of the severity requirement is to screen out claims that, based on the medical record, are totally groundless.  *Higgs*, 880 F.3d at 863; *Farris*, 773 F.2d at 90 n.1.

The administrative law judge determined that plaintiff's seizure disorder and history of right shoulder injury constituted severe impairments. *See* R. 59. The administrative law judge concluded that plaintiff's headaches, however did not significantly limit her ability to perform basic work activities. He noted that the record indicated that Ms. Mohamed's difficulties with headaches were almost resolved. *See* R. 270.

Because the administrative law judge concluded that some of plaintiff's impairments were severe, he proceeded with the sequential analysis. The remaining steps of the sequential analysis require the administrative law judge to consider a claimant's severe and non-severe impairments. Failure to identify an impairment as severe, standing alone, is not reversible error.  *Anthony v. Astrue*,  266 Fed. Appx. 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe)).

Treating Doctor: Legal Standard.  A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.,* the error is *de minimus. Wilson,* 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 38o (6th Cir. 2013).

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p[3]. *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[4] *Gayheart,* 710 F.3d at 375.

The Commissioner has issued a policy statement, Social Security Ruling 92-6p, to guide decision-makers' assessment of treating-source opinion. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

---

[3]Social Security Ruling 96-2p provides, in relevant part:
. . .
6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

[4]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons not to give the treating-source opinion

24

controlling weight.  20 C.F.R. § 404.1527(c)(2)[5]; *Gayheart,* above,710 F.3d at 376, 2013 WL 896255, *10.

If there are good reasons to find that the treating-source opinion is not controlling, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources[6]. The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment

---

[5]Section 404.1527(c)(2) provides, in relevant part:
 If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. *When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion*

(Emphasis added.)

[6]Even when the treating source-opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:
Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and labora- tory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weigh- ed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

relationship; how well-supported the opinion is by medical signs and laboratory

findings; its consistency with the record as a whole; the treating source's specialization;

the source's familiarity with the Social Security program and understanding of its

evidentiary requirements; and the extent to which the source is familiar with other

information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through

(6). Subject to these guidelines, the Commissioner is the one responsible for determining

whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-

2p.  A broad conclusory statement of a treating physician that his patient is disabled is

not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating

physician's opinion to have controlling weight it must have "sufficient data to support

the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th

Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may

reject the treating doctor's opinions when "good reasons are identified for not accepting

them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Wilson v. Commissioner of Social

Security,* 378 F.3d 541, 544 (6th Cir. 2004). These reasons must be "supported by the

evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5;

 *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007). This

procedural requirement "ensures that the ALJ applies the treating physician rule and

permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).Moreover, the conflicting substantial evidence "must consist of more than the medical opinions of nontreating and nonexamining doctors." *Gayheart*, 710 at 377. Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson*, 378 F.3d at 544; *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security,* 486 F.3d at 242; *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

<u>Treating Doctor: Discussion</u>.  The administrative law judge evaluated Dr. Lin's opinion as follows:

> [T]reatment notes provided by the claimant demonstrate that she has a history of seizure disorder dating back to at least 2007 along with diagnoses of right side pain (Exhibit 4F, 1). The seizure disorder is described as complex partial seizures and secondary generalized tonic/clonic seizures (Exhibit 4F, 3). Treatment notes from treating physicians describe the seizures as being well controlled and the record demonstrates few instances of the claimant actually having a seizure and immediately seeking treatment (Exhibit 20F; Exhibit 23F, 41). . . .

27

> In addition to the aforementioned treatment notes, the record includes a medical source statement from Yixin Lin, M.D. who stated that that medication taken for the claimant's seizure disorder affects cognitive function of the brain and difficulties with memory thus preventing the claimant from being able to learn English or American history for the citizenship test (Exhibit 18F, 1). In considering this opinion, I afford it little weight for several reasons. Reasons for reaching this conclusion include that Dr. Lin's opinion is not fully supported by objective evidence within the record and the record does not demonstrate that Dr. Lin is familiar with Social Security's occupational standards. In addition, the opinion indicates that it is highly dependent upon the subjective statements of the claimant and her father, without any sort of significant reliance on objective medical evidence.

(R. 62.) Here, the administrative law judge provided "good reasons" for his decision not to adopt Dr. Lin's opinion. The administrative law judge concluded that the opinion was not supported by objective medical evidence in the record and that Dr. Lin relied on plaintiff's statements rather than objective medical evidence.

In her reply, plaintiff argues that the administrative law judge neglected to consider Dr. Lin's opinion in Exhibit 20F, in which he indicated that plaintiff suffers from migraines headaches five times a week. This statement is not supported by any objective medical evidence.

The administrative law judge also properly considered the opinion of Dr. Donaldson, an examining psychologist, as follows:

> As part of her Social Security application, the claimant underwent a consultative examination to evaluate alleged mental health difficulties (Exhibit 6F) The examiner found that the claimant appeared withdrawn and that the claimant's response seemed intentionally vague. Following the examination, the examiner diagnosed the claimant has having major depressive disorder and generalized anxiety disorder and opined that the claimant had marked limitations in the ability to relate to supervisors and

co-workers is markedly limited along with moderate limitations in the ability to withstand the stress of day-to-day work. In considering this opinion, I afford it limited weight with the finding that the claimant possesses marked limitations in her ability to relate to supervisors and coworkers being rejected, as that finding is not consistent with activities of daily living that included working and attending classes.

(R. 62-63.) Dr. Donaldson is not a treating source and is therefore not entitled to controlling weight. The administrative law judge considered his opinion and explained his rationale for not adopting Dr. Donaldson's findings. He noted that the limitations found by Dr. Donaldson were inconsistent with plaintiff's activities of daily living, which included working and taking classes.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


       s/Mark R.  Abel
United States Magistrate Judge